# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAFAEL DIAZ, | ) |
|        Petitioner, | ) Case No. 16-cv-264 |
| v. | ) Judge Robert M. Dow, Jr. |
| VICTOR CALLOWAY, Warden, Danville Correctional Center, | ) |
|        Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner Rafael Diaz ("Petitioner") is an inmate at the Danville Correctional Center in the custody of Warden Victor Calloway ("Respondent"). Petitioner is serving a 12-year sentence for a conviction of aggravated criminal sexual assault. Before the Court is Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 in which he argues that his state conviction and sentence should be vacated because (1) he was denied effective assistance of counsel when his trial counsel failed to request a jury instruction of battery as a lesser included offense of aggravated criminal sexual assault, and (2) he was denied his right to due process when the trial court failed to instruct the jury on the use of prior inconsistent statements as substantive evidence (paragraph two of Illinois Pattern Instruction ("IPI") 3.11). See [1]. For the reasons set forth below, the Court denies Plaintiff's petition [1], declines to certify any issue for appeal pursuant to 28 U.S.C. § 2253(c)(2), and directs the Clerk to enter judgment in favor of Respondent.

I.   Background

Petitioner was charged with aggravated criminal sexual assault and home invasion in Cook County, Illinois. He elected to be tried by a jury.

At his May 2012 trial, the victim, R.A.E., testified that she returned home from work on August 31, 2008 to the trailer that she shared with her husband, her five year old son, and her brothers Antonio and Isidro. R.A.E. testified that Isidro was alone on the porch when she arrived home and was not drinking, but on cross-examination R.A.E. admitted that she told police following the incident that Isidro had been drinking. R.A.E. testified that upon arriving home she entered the trailer, showered, and went to sleep in her bedroom next to her son.

R.A.E. testified further that she awoke to find a man who she identified as Petitioner on top of her with his fingers in her vagina. When R.A.E. defended herself, Petitioner hit her, pulled her hair, and called her a "fucking bitch." [6-11] at 249. He then threw her off the bed onto the floor and continued to strike and kick her. *Id*. R.A.E. testified that she screamed for help, which caused her brother Antonio to enter the room. On cross-examination, defense counsel presented R.A.E. with a police report that recorded that she told police that Isidro had come into her room, struggled with Petitioner, and chased him out of her bedroom. R.A.E. testified that she did not recall whether she told officers this.

R.A.E. further testified that, after speaking to police officers, she was taken to the hospital and examined and interviewed by nurse Nancy Healy. Nurse Healy testified at trial. According to Nurse Healy, R.A.E. (with the help of a Spanish translator) told her that Petitioner put four fingers in her vagina and she experienced vaginal pain during the incident. [6-12] at 43. R.A.E. had bruising and swelling around her eyes, forehead and mouth and visible injuries to her shoulder, arm and back. *Id*. at 42, 49-50. Nurse Healy testified that she performed a vaginal

2

examination and administered a sexual assault kit, but did not observe any injuries to R.A.E.'s vagina, pelvis, or abdomen.

R.A.E.'s brother Antonio testified at trial that on the night of October 31, 2008, he picked up R.A.E.'s son after work and upon arriving home saw Isidro on the porch. Antonio testified that Isidro was not drinking. He further testified that R.A.E. came home from work around midnight and went into her room. Antonio fell asleep on the couch and was awakened around 4:00 a.m. by Petitioner entering the trailer and locking the door behind him. Petitioner asked for directions to the bathroom and Antonio pointed him to the back of the trailer. About five minutes later, Antonio heard his sister screaming so went to her room. He opened the door and saw Petitioner on the floor with R.A.E., holding her by the hair and hitting her in the face. Antonio ran for help. Isidro tried to open the trailer door when he heard R.A.E. screaming, but the door would not open.

At trial, Officer Robitz testified that when he found Petitioner following the incident, he had scratches on his face.

Petitioner also testified at his trial. According to Petitioner, on the night of August 31, 2008, he went to a trailer park to visit friends. He drank more than a case of beer over the course of the evening. Around 1:30 a.m., he encountered Isidro and Isidro invited him over to his trailer for more drinks. Isidro and Petitioner got into an argument over whether Petitioner took Isidro's wallet, and Isidro threatened Petitioner with a stick. Isidro soon discovered he was mistaken, and apologized to Petitioner. According to Petitioner, he then asked Isidro if he could use the bathroom and Isidro told him to go inside. Isidro entered the trailer and saw a young man in the couch, who he asked for directions to the bathroom. The man pointed to the back of the trailer and Petitioner walked down the hall. Petitioner looked into one room, which contained a bed.

3

He opened the door to a second room, turned on the light, and saw a person. He turned off the light, closed the door, and opened the door to a third room, which was the bathroom. After using the bathroom, he went into the hall, where he saw a shadow. According to Petitioner, someone jumped out and attacked him, scratched his face, and kicked and kneed him. Petitioner hit his alleged attacker (R.A.E) and she fell to the floor. R.A.E. yelled, "what are you doing in my house?," but Petitioner did not say that Isidro had let him use the bathroom. Instead, according to Petitioner, he hit R.A.E several time, causing her injuries that were depicted in photo exhibits presented at trial. According to Petitioner, the struggle lasted ten to thirty seconds, and then he fled.

Prior to closing arguments, the court held a jury instruction conference with counsel. Petitioner's trial counsel did not request an instruction for battery as a lesser-included offense of aggravated criminal sexual assault. See [6-13] at 17-19.

At the jury instruction conference, Petitioner's counsel proffered the full IPI 3.11 pertaining to prior inconsistent statements. [6-13] at 20-21. The full pattern instruction contains language indicating that jurors can consider some inconsistent statements—which would otherwise be inadmissible hearsay—as substantive evidence. Specifically, it states in relevant part:

> The believability of a witness may be challenged by evidence that on some former occasion he made a statement that was not consistent with his testimony in this case. Evidence of this kind ordinarily may be considered by you only for the limited purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom.
>
> However, you may consider a witness's earlier inconsistent statement as evidence without this limitation when:
>
> [1] the statement was made under oath at a [(trial) (hearing) (proceeding)] [or]

> [2] the statement narrates, describes, or explains an event or condition the witness had
>
> personal knowledge of; and [a] the statement was written or signed by the witness [or]
>
> [b] the witness acknowledged under oath that he made the statement.
> ***
>
> It is for you to determine [whether the witness made the earlier statement, and, if so] what weight should be given to that statement. In determining the weight to be given to an earlier statement, you should consider all of the circumstances under which it was made.

[6-1] at 12-13; IPI 3.11.

The court found that the prior inconsistent statements that R.A.E. and Antonio admitted to during the trial did not qualify as substantive evidence under 725 ILCS 5/115-10.1 because "they were not signed statements by the witness[es]." [6-13] at 20-21.

The court held closing arguments. Petitioner's trial counsel conceded that Petitioner had assaulted R.A.E., but asserted that Petitioner did not sexually assault her. Trial counsel argued: "It's absolutely wrong what happened to [R.A.E.] She shouldn't have been beat up by him. It was wrong. But you know what, because she says she was sexually assaulted and believed maybe that she was sexually assaulted might be understandable, what he did to her was absolutely wrong, but he is not charged with battery in this case, he is charged with home invasion and aggravated criminal sexual assault. If you were given a verdict of aggravated battery, I'd tell you go back there and sign it but he's not been charged with that. Because she believes she was sexually assaulted does not make it so." [6-13] at 49.

The court instructed the jury. The court gave the jury the first paragraph of IPI 3.11, rather than the whole instruction requested by Petitioner's counsel. [6-1] at 13. Following deliberations, the jury returned a guilty verdict on the aggravated criminal sexual assault charge.

Petitioner took a direct appeal. The Illinois Appellate Court affirmed Petition's conviction. It held, among other things, that: (1) there was sufficient evidence to support Petitioner's conviction for aggravated criminal sexual battery; (2) Petitioner's trial counsel was not ineffective for failing to request a jury instruction for battery as a lesser-including offense of aggravated criminal sexual assault; and (3) the trial court did not abuse its discretion by refusing to give the paragraph of IPI 3.11 concerning prior inconsistent statements. See [6-1]. The Illinois Supreme Court denied Petitioner's petition for leave to appeal.

## II. Legal Standards

### A. Habeas

"Because this case entails federal collateral review of a state conviction," it is governed by 28 U.S.C.§ 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Long v. Pfister*, -- F.3d --, 2017 WL 4707324, at *1 (7th Cir. Oct. 20, 2017) (en banc). Under that statute, Petitioner is not entitled to relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim— (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Unreasonable" as used in the statute means "something like lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (internal quotation and citation omitted). Further, the state court's factual findings are "presumed to be correct," and the petitioner bears the "burden of rebutting the presumption of correctness by clear and convincing

evidence." 28 U.S.C. § 2254(e)(1); see *also Toliver v. McCaughtry*, 539 F.3d 766, 772 (7th Cir. 2008).

B.  **Ineffective Assistance of Counsel**

In order to prevail on an ineffective assistance of counsel claim, Petitioner must show that his counsel's performance was deficient and that he was prejudiced by the deficiencies in counsel's performance. *Strickland v. Washington*, 466 U.S. 688, 687 (1984). Both components of the test must be satisfied and "the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996). The Court's review under *Strickland* is deferential and applying *Strickland* under the AEDPA (which itself also requires deference) results in a double level of deference to the state court determination. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Under the first prong of the *Strickland* test, Petitioner must establish that "counsel's representation fell below an objective standard of reasonableness" when measured against "prevailing professional norms." *Strickland*, 466 U.S. at 688; see *also Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016). A court must consider "all of the circumstances of [the] case" in determining whether counsel's acts or omissions "were made outside the wide range of professionally competent assistance." *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000) (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). "When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight." *United States v. Taglia*, 922 F.2d 413, 417-18 (7th Cir. 1991). A review of counsel's performance is "highly deferential," and a court's analysis must begin with a "strong presumption" that the defendant's attorney provided adequate representation to his

7

client. *United States v. Meyer*, 234 F.3d 319, 324-25 (7th Cir. 2000) (internal quotation marks and citations omitted).

Under the prejudice prong, a petitioner must show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; see *also Rastafari* v. *Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 694. Instead, "[c]ounsel's errors must have been 'so serious as to deprive the defendant of a fair trial.'" *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 693). "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (quoting *Strickland*, 466 U.S. at 693, 697).

**III. Analysis**

    **A. Battery Instruction**

Petitioner argues that his trial counsel provided ineffective assistance by failing to request a jury instruction for battery as a lesser-included offense of aggravated criminal sexual assault. According to Petitioner, his trial counsel's all-or-nothing strategy prevented him from receiving a fair trial.

The Illinois Appellate Court, considering this ineffective assistance claim, explained that counsel's "decision to offer a jury instruction on a lesser-included offense is generally viewed as

8

one of trial strategy with no bearing on the competency of counsel." [6-1] at 10-11 (citing *People v. Evans*, 859 N.E.2d 642, 655 (Ill. App. 2006)). The Illinois Appellate Court determined that "[t]he State was not required to prove specific intent to cause bodily harm"—one of the necessary elements of battery—"in order to convict [Petitioner] of aggravated criminal sexual assault," and therefore "battery was not a lesser-included offense and counsel's failure to request a jury instruction on battery did not constitute error." [6-1] at 11 (citing *People v. Leonard*, 1717 Ill. App. 3d 380, 390 (Ill. App. 1988)). The Illinois Appellate Court also reasoned that, "if the jury wished to hold [Petitioner] responsible for something other than aggravated criminal sexual assault, it had that option with the home invasion charge." *Id*.

The Court, giving proper deference to the state court's judgment, concurs with the Illinois Appellate Court's conclusion that trial counsel's failure to request an instruction for battery as a lesser-included offense did not constitute ineffective assistance under *Strickland*. The Court finds it unnecessary to consider whether battery is, in fact, a lesser-included offense of aggravated sexual assault, because regardless Petitioner's argument fails both parts of the *Strickland* test.

As to counsel's performance, Seventh Circuit "case law establishes that where evidence at trial supports a lesser jury instruction, trial counsel may make a strategic decision not to request such instruction," and "*Strickland* generally provides a presumption of strategic decisionmaking by counsel." *Mitchell v. Enloe*, 817 F.3d 532, 538-39 (7th Cir. 2016). While "that presumption does not extend to situations where there was 'no strategic rationale underlying [the] errors," *id.* at 539 (internal quotation marks and citation omitted), that is not the situation here. There was a clear strategic rationale not to give the lesser included offense instruction. The evidence of battery—R.A.E.'s testimony, photographic evidence of R.A.E.'s

9

injuries, plus Petitioner's own testimony that he hit R.A.E. and caused those injuries—was stronger than the evidence of sexual assault—R.A.E.'s uncorroborated testimony. If the jury had accepted Petitioner's position that there was insufficient evidence of sexual assault, then Petitioner would have been acquitted of that charge and would also have escaped a battery conviction, for which the evidence was stronger. Petitioner is therefore unable to overcome the presumption that his trial counsel made a strategic decision not to request the battery instruction.

Petitioner faults his trial counsel for stating in closing arguments that Petitioner "should not have . . . beaten [or] punched" R.A.E., and asserts that by doing do, counsel "acknowledged that . . . Petitioner had committed a serious offense and severely and unlawfully injured the victim, but did so without any cognizable plan to mitigate that admission." [1] at 12. But it was Petitioner who admitted during his trial testimony that he punched R.A.E. and caused the serious injuries shown in the photographic evidence. Petitioner's counsel acknowledged this evidence but argued that it was not sufficient for the jury to convict, because Petitioner had been charged with aggravated sexual assault rather than aggravated battery. See [6-13] at 49. Further, Petitioner's counsel had a plan to mitigate this damaging evidence, which the Illinois Appellate Court recognized: "if the jury wished to hold [Petitioner] responsible for something other than aggravated criminal sexual assault, it had that option with the home invasion charge." [6-1] at 11. Thus, this was not a case where counsel's decision not to request a lesser-included offense instruction left the jury with an "all or nothing" choice, like in the *Beck* case cited by Petitioner. See [1] at 12-13 (citing *Beck v. Alabama*, 447 U.S. 625, 637 (1980)). *Beck* is inapplicable in any event, because it involved the constitutionality under the Due Process Clause of a state statute that precluded lesser included offense instructions in capital cases—not the effectiveness of counsel under the Sixth Amendment. 447 U.S. at 638.

Further, Petitioner has not shown that trial counsel's failure to request a lesser-included offense instruction resulted in prejudice, as required under the second part of the *Strickland* test. Petitioner claims that had counsel requested the instruction, "there is a substantial probability, based upon the inconsistencies in the testimony of state witnesses, that the jury would have convicted the Petitioner of mere battery, a far less serious offense than aggravated sexual assault." [1] at 12. However, Petitioner does not identify any specific inconsistencies that would have resulted in the jury not believing R.A.E.'s testimony that she awoke to Petitioner sexually assaulting her. As the Illinois Appellate Court explained, all of the inconsistencies in testimony identified by Petitioner "are collateral to [R.A.E.'s] testimony about the sexual assault itself." [6-1] at 9.

The Court also agrees with the Illinois Appellate Court's conclusion that Petitioner's testimony—along with the corroborating testimony of her brother Antonio, who saw Petitioner on top of R.A.E. in her bedroom, and medical reports showing that R.A.E. had bruising and swelling on her eyes, forehead and around her mouth, a torn bra, and visible injuries to her should, arm, and back—"supports [Petitioner's] conviction for aggravated criminal sexual assault beyond a reasonable doubt." [6-1] at 7. The fact that Nurse Healy did not note any physical injuries to Petitioner's vagina is not sufficient to undermine this conclusion. See *id.*; *People v. Alexander*, 14 N.E.3d 654, 661 (Ill. App. 2014) (victim's testimony at bench trial that defendant penetrated her was sufficient to support conviction for criminal sexual assault even though pelvic exam revealed no tears or abrasions). In short, "the jury took a view of the evidence that permitted conviction" for aggravated criminal sexual assault, and it is "unlikely that the jury would have disregarded th[e] evidence and believed [Petitioner's] account even if

11

counsel had presented" the lesser-included offense instruction for battery. *Mitchell*, 817 F.3d at 540.

For these reasons, the Court concludes that Petitioner's trial counsel did not provide ineffective assistance by making the strategic decision not to request a lesser-included offense instruction for battery.

### B. Prior Inconsistent Statement Instruction

Petitioner argues that he was denied his right to due process because the trial court failed to instruct the jury on the use of prior inconsistent statements as substantive evidence. Petitioner posits that if the prior inconsistent statements elicited at trial were considered as substantive evidence—rather than simply for impeachment—then the narrative of the incident would be cast with reasonable doubt. [1] at 14.

Before turning to the merits of Petitioner's argument, the Court must address whether it has been procedurally defaulted. Before seeking habeas relief in federal court, a petitioner must exhaust all remedies available to him in state court. See *Richardson v. Lemke*, 745 F.3d 258, 268 & n.4 (7th Cir. 2014). "This requires the petitioner to fairly present his federal claim to the state courts through one complete round of state court review, whether on direct appeal or in post-conviction proceedings." *Whatley v. Zatecky*, 833 F.3d 762, 770-71 (7th Cir. 2016). "At bottom, we must consider whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Id*. at 771 (internal quotation marks and citation omitted).

According to Respondent, Petitioner raised only a state due process claim on direct appeal, rather than a federal due process claim, and Petitioner also failed to raise the claim in his petition for leave to appeal ("PLA") to the Illinois Supreme Court. The Court concludes that

Petitioner has not procedurally defaulted his claim. In both his opening brief in the Illinois Appellate Court and in his PLA, Petitioner argued that "[u]nder the State and Federal constitutions, a defendant has a right to a trial by a fair and impartial jury" and "[i]mplicit within this constitutional right is the requirement that the jury be properly instructed." [6-2] at 34 and [6-5] at 12 (citing the Fifth and Fourteenth Amendments of the U.S. Constitution). Petitioner then explained why the trial court's failure to give the paragraph of I.P.I. 3.11 concerning prior inconsistent statements was an error that denied Petitioner a fair trial. See [6-2] at 12-14 and [6-5] at 33-41. This line of argument was sufficient to fairly present the issue to the state courts. Therefore, the Court will consider the merits of Petitioner's claim.

On direct appeal, the Illinois Appellate Court concluded that the trial court did not abuse its discretion by refusing to give the paragraph of IPI 3.11 concerning prior inconsistent statements. See [6-1]. The court explained that "'[f]ailure to instruct the jury regarding the use of prior inconsistent statements as substantive evidence does not require reversal unless there is a reasonable probability that the outcome of the trial would have been changed had the jury been properly instructed.'" [6-1] at 13 (quoting *People v. Fierer*, 631 N.E.2d 1214, 1223 (Ill. App. 1994)). The court found that Petitioner made "no argument as to why the statement that Isidro attempted to enter the trailer, if considered as substantive evidence, would have changed the outcome of the trial" and therefore it was "not persuaded that Antonio's testimony on this minor collateral matter would have made a difference." *Id*.

Generally, state law instructional errors are "beyond the scope of federal habeas review." *Rosario v. Akpore*, 967 F. Supp. 2d 1238, 1250 (N.D. Ill. 2013); see also *Gilmore v. Taylor*, 508 U.S. 333, 334 (1993). In determining if the trial court's failure to instruct the jury regarding using prior inconsistent statements as substantive evidence constitutes a violation of Petitioner's

right to due process, the Court's inquiry is limited to "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Burris v. Smith*, 819 F.3d 1037, 1042 (7th Cir. 2016) (quoting *Waddington v. Sarausad*, 55 U.S. 179, 191 (2009)).

The Court concurs with the Illinois Appellate Court's analysis of this issue. The Court is not persuaded that the trial court's alleged failure to instruct the jury that it could consider witnesses' prior inconsistent statements as substantive evidence, rather than just for impeachment, infected the trial so significantly that it resulted in a deprivation of Petitioner's right to due process. In his habeas petition, Petitioner identifies the following inconsistencies in R.A.E. and Antonio's testimony: (1) R.A.E. told police that her brother Isidro had run into the bedroom and struggled with Petitioner, but testified at trial that it was her brother Antonio who broke up the altercation; (2) R.A.E. told police at the scene that she locked her bedroom door after the attack, but testified at trial that she ran outside to get help; (3) Antonio told police that he did not accost Petitioner in the bedroom, but testified at trial that he did; and (4) Antonio told police that Isidro was drinking on the porch with Petitioner, but later testified that Isidro had not been drinking. [1] at 13-14.

All of the prior inconsistent statements concerned collateral details of the night of the attack. Petitioner's counsel was allowed to and did point out these inconsistencies at trial, using them to impeach the witness' testimony. Petitioner never explains why admitting the other inconsistencies as substantive evidence, rather than for impeachment purposes, would have lead the jury to reach a different verdict. There is no suggestion that, were the jury to have accepted as substantive evidence that Isidro was drinking, that Antonio rather than Isidro came to R.A.E.'s aid, or that R.A.E. locked herself in the bedroom immediately after the attack rather than running outside, the outcome of the trial would have been different. This evidence had no bearing on

14

R.A.E.'s testimony about what Petitioner did to her, which the jury obviously found to be credible.

Therefore, the Court concludes that Petitioner's due process rights were not violated by the trial court's refusal to read the paragraph of IPI 3.11 concerning use of prior inconsistent statements as substantive evidence.

## IV. Certificate of Appealability

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336. Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his Section 2254 claims debatable or wrong. *Id.*; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ regarding the merits of his claim. The Court therefore declines to issue a certificate of appealability.

## V. Conclusion

For these reasons, the Court denies Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 [1]. The Court declines to certify any issues for appeal under 28. U.S.C. § 2253(c)(2). The Clerk is instructed to enter a judgment in favor of Respondent and against Petitioner. Civil Case terminated.

Dated: November 9, 2017

_____
Robert M. Dow, Jr.
United States District Judge